## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|                                                         |   |                          |
|---------------------------------------------------------|---|--------------------------|
| DONNIE LEE HENSON,                                      | ) |                          |
|                                                         | ) |                          |
|     Plaintiff,                                          | ) |                          |
|                                                         | ) |                          |
| v.                                                      | ) | Case No. 4:16-cv-00952-NCC |
|                                                         | ) |                          |
| NANCY A. BERRYHILL,[1]                                  | ) |                          |
| Acting Commissioner of Social Security,                 | ) |                          |
|                                                         | ) |                          |
|     Defendant.                                          | ) |                          |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Donnie Lee Henson ("Plaintiff") for disability

insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§

401, *et seq.*, and Supplemental Security Income ("SSI") under Title XVI of the Social Security

Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 17),

Defendant has filed a brief in support of the Answer (Doc. 24), and Plaintiff has filed a reply

brief (Doc. 27). The parties have consented to the jurisdiction of the undersigned United States

Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on December 10, 2012 and January 22,

2013 respectively (Tr. 11, 190-96). Plaintiff was initially denied on May 23, 2013, and he filed a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 106-15, 124). After a

hearing and a subsequent supplemental hearing, by decision dated March 4, 2015, the ALJ found

Plaintiff not disabled (Tr. 8-27). On April 27, 2016, the Appeals Council issued a decision

denying Plaintiff's request for review (Tr. 1-3). As such, the ALJ's decision stands as the final

decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since

December 10, 2012, the alleged onset date (Tr. 13). The ALJ found that the Plaintiff has the

following medically determinable impairments: history of cerebrovascular disease,[2] depression,

and a substance addiction disorder but that no impairment or combination of impairments met or

medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (Tr. 13-14).

After considering the entire record, the ALJ determined Plaintiff has the residual

functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) and

416.967(c), in that, he can frequently lift 25 pounds, occasionally lift up to 50 pounds, stand or

walk for approximately six hours in an eight-hour workday, and sit for approximately six hours

in an eight-hour workday with normal breaks (Tr. 15). However, the ALJ indicated that Plaintiff

has the following nonexertional limitations (*Id.*). Plaintiff should avoid activities that require

peripheral vision or near acuity with the left eye; is limited to the performance of simple, routine,

and repetitive tasks involving only simple work-related decisions; and is limited to no more than

---

[2] "The term cerebrovascular disease includes all disorders in which an area of the brain is
temporarily or permanently affected by ischemia or bleeding and one or more of the cerebral
blood vessels are involved in the pathological process. Cerebrovascular disease includes stroke,
carotid stenosis, vertebral stenosis and intracranial stenosis, aneurysms, and vascular
malformations." *Cerebrovascular Disease*, Am. Ass'n. of Neurological Surgeons,
http://www.aans.org/Patients/Neurosurgical-Conditions-and-Treatments/Cerebrovascular-
Disease (last visited Sept. 19, 2017).

occasional interaction with coworkers and supervisors (*Id.*). The ALJ found Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including linen room attendant, stubber, and dining room attendant (Tr. 20-21). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 21). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d).

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

Plaintiff generally asserts that the Commissioner's decision is not supported by substantial evidence. In his 45-page Brief in Support of the Complaint, Plaintiff raises eight enumerated issues and various additional sub-issues. The Court will address Plaintiff's specific

assertions throughout the opinion. For the following reasons, the Court finds Plaintiff's arguments without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

## A. Credibility

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. *See Guilliams*, 393 F.3d at 801; *Masterson*, 363 F.3d at 738. It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992). As addressed above, when evaluating a claimant's credibility, the ALJ must consider the following factors:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

To the extent that the ALJ did not specifically cite *Polaski*, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. *Randolph v.*

*Barnhart*, 386 F.3d 835, 842 (8th Cir. 2004); *Wheeler v. Apfel*, 224 F.3d 891, 895 n.3 (8th Cir. 2000). Additionally, an ALJ need not methodically discuss each *Polaski* factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. *See Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). *See also Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."); *Strongson*, 361 F.3d at 1072; *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's activities of daily living and found his level of activity inconsistent with his alleged limitations (Tr. 14, 17, 20). An ALJ may discount a claimant's subjective claims of extreme pain or limitations if such claims are inconsistent with the claimant's daily activities. *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). Specifically, the ALJ noted that Plaintiff does not have any psychological issues with the performance of all self-care activities (Tr. 14, 20, 258). Further, as the ALJ indicated, Plaintiff stated that he continues to drive when necessary and to perform ordinary household chores such as taking out the trash and feeding the chickens (Tr. 14, 20, 54, 60, 65, 260). While Plaintiff

reported that he spends a significant amount of time watching television, he also testified that he occasionally fishes (Tr. 20, 62-63, 68, 261, 384, 398). Therefore the ALJ concluded that the evidence of record fails to indicate that Plaintiff has more than mild limitations in this area (Tr. 14). Indeed, the Court finds this assessment to be supported by the record. As noted by the ALJ, upon competition of an occupational therapy evaluation after suffering the cerebrovascular attack, or stroke, the occupational therapist found Plaintiff not to have any functional deficits and no difficulties performing all activities of daily living (Tr. 17, 329). Further, in his psychological evaluation Dr. Thomas J. Spencer, Psy.D., a consultative examiner, stated, "He remains independent with his ADL's [Activities of Daily Living] although it takes longer to complete them" (Tr. 383).

While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, a claimant's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. *See Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) ("Wright himself admits to engaging in daily activities that this court has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking."); *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (determining that the ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"); *Buckner v. Astrue*, 646 F.3d 549, 555 (8th Cir. 2011) (finding plaintiff's depression was not severe where plaintiff engaged in a daily activities that were inconsistent with his allegations). *See also Ponders v. Colvin*, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs

light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family"); *Roberson v. Astrue*, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for grocers, and visited friends). Moreover, to the extent Plaintiff urges the Court to reweigh the evidence regarding his daily activities and draw its own conclusion in this regard, it is not the function of the Court to do so. *See Bates v. Chater*, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations omitted). In any case, Plaintiff's daily activities were only one of many factors considered by the ALJ when determining Plaintiff's credibility.

Second, the ALJ considered that the evidence of record did not corroborate the severity of the symptoms of Plaintiff's impairments (Tr. 16, 15-20). The objective medical evidence, or lack thereof, is an important factor to consider in determining credibility. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of a claimant's symptoms and the effect those symptoms may have on a claimant's ability to work). The ALJ noted that Plaintiff quickly improved after his December 2012 hospitalization; "[T]he claimant's symptoms improved significantly and were notably very stable with appropriate treatment. The claimant's blood pressure was similarly noted to have quickly stabilized once appropriate medications were administered" (Tr. 17, 328). Plaintiff was evaluated by physical therapy during his hospitalization and while the therapists noted right-sided deficiencies, "[h]e was able to walk . . . 250 feet, up and down stairs with supervision. He does stagger and step sideways to catch his

balance [but t]hey do not feel he will need any equipment at discharge and they did not provide him with home strength exercises" (Tr. 329).

Third, the ALJ noted Plaintiff's lack of mental health treatment (Tr. 19). Upon review of the record, the Court notes that Plaintiff appears to have received psychotropic medication from his primary care physician although, at times, he indicates that he is not on any medication (*See* Tr. 383, 397). As for mental health treatment provided by a specialist, the ALJ correctly notes that Plaintiff attended one psychiatric medication management appointment in early February 2014 (Tr. 19, 397-99). In the treatment notes from this session, it appears Plaintiff may have submitted to a psychiatric evaluation in September of 2013 (*See* Tr. 398). Plaintiff asserts "lack[] of funds" as good cause for failing to pursue medical treatment (Doc. 17 at 36). Indeed, in some cases, a lack of financial resources may justify a plaintiff's failure to seek medical care. *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989). However, a claimant must present "supporting evidence" that his failure to seek medical treatment was due to the expense. *George v. Astrue*, 301 F. App'x 581, 582 (8th Cir. 2008) (per curiam). *See also Carrigan v. Astrue*, No. 4:08 CV 4018, 2009 WL 734116, at *6-7 (W.D. Ark. Mar. 17, 2009) (claimant's "bare statement" that he is unable to afford medical treatment is insufficient to establish that inability.) Not only did Plaintiff not provide any supporting information, the record reveals Plaintiff smokes a pack of cigarettes a day, contradicting his financial need theory (Tr. 326, 340, 380, 383). Further, the records indicate generally normal psychiatric findings. For example, at his hospitalization in December 2012, Plaintiff was noted as appearing "appropriate" and "cheerful" (Tr. 327). *See also* Tr. 384 (describing Plaintiff's appearance).

Fourth, the ALJ notes that Plaintiff's primary care treatment was "generally unremarkable" and was primarily limited to a few relatively minor acute subjective complaints (Tr. 18). For example, in July 2013, Plaintiff presented with complaints of neck pain (Tr. 405);

in August 2013, Plaintiff presented with complaints of trouble sleeping (Tr. 407); in November 2013, Plaintiff presented to refill his medications (Tr. 418); and in May 2014, Plaintiff presented with complaints of a rash on his leg (Tr. 425). Further to the extent there was object testing in the record, it was largely normal. For example, several CT scans noted the cerebrovascular disease and the possibility that the affected area was expanding but later findings of the neck were largely normal and Plaintiff reported his symptoms had resolved (Tr. 355, 416, 438). Further, the records indicate that, upon examination, Plaintiff exhibited normal range of motion. Dr. John Demorlis, M.D., a consultative examiner, conducted a range of motion exam and found, except for slight weakness in his right wrist, Plaintiff demonstrated a normal range of motion throughout (Tr. 375-76). Plaintiff's providers at the Mercy Clinic also reported a normal range of motion (*See, e.g.,* Tr. 416, 418).

Fifth, the ALJ considered Plaintiff's noncompliance with his health care providers' recommendation that he take medication (*See* Tr. 16-17). As indicated by the ALJ, Plaintiff reported to hospital personnel that he had been prescribed hypertension medications during his most recent primary care visit in March 2012, but reported that he was not taking the medication (Tr. 17, 326, 342 ("I'm supposed to be on meds, but I don't take them.")). He also told his primary care physician in July 2013 that he had stopped taking "his meds a couple years ago" (Tr. 18, 401). An ALJ may properly consider a claimant's noncompliance in his credibility determination. *See Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (affirming where ALJ found that claimant's "credibility suffered from his refusal to take pain medication and his refusal to seek out even conservative treatments such as physical therapy"); *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control;

claimant's noncompliance with a diet regimen prescribed by doctor contributed to a negative credibility determination).

In conclusion, the Court finds that the ALJ gave good reasons for finding Plaintiff's allegations regarding the severity of his conditions not fully credible, and that the ALJ's analysis was carefully linked to the evidence of record. *See Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006) ("If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment.") (internal quotation marks and citation omitted). As such, the Court further finds that the ALJ's credibility determination is based on substantial evidence and is consistent with the Regulations and case law.

### B. Plaintiff's RFC

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

As a preliminary matter, Plaintiff contends that the ALJ erred by failing to consider the evidence of disability from another governmental or non-governmental agency (Doc. 17 at 41). Indeed, findings of disability by other federal agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision. *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998) (citing *Wilkins v. Callahan*, 127 F.3d 1260, 1262 (10th Cir. 1997); *Baca v. Department of Health and Human Services*, 5 F.3d 476, 480 (10th Cir. 1993); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979)). An ALJ, however, "is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits, 20 C.F.R. § 404.1504." *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (quoting *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994) (per curiam)) ("There is no support for [the claimant]'s contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards."). In the matter under consideration, the ALJ did not ignore the findings regarding Plaintiff's eligibility for home health services. Indeed, no report was ever tendered to the Commissioner and therefore the ALJ's duty to explicitly address the finding was not triggered. *Hurd v. Astrue*, No. 4:12-CV-228-JCH-NAB, 2013 WL 1149156, at *7 (E.D. Mo. Mar. 6, 2013), *report and recommendation adopted in part, rejected in part sub nom. Hurd v. Colvin*, No. 4:12CV228 JCH, 2013 WL 1149160 (E.D. Mo. Mar. 19, 2013) (noting that the claimant did not provide any supporting documentation of any disability finding by a state agency before the ALJ or the Appeals Council.) *See also Buckner v. Astrue,* 646 F.3d 549, 559 n.8 (8th Cir. 2011) ("The ALJ also did not err by failing to address the fact that Buckner may have received Medicaid benefits at one time because this evidence, standing alone, does not indicate whether another agency found Buckner disabled."). Regardless, as addressed in more detail throughout this opinion, the ALJ considered and discussed the underlying medical

evidence and stated his reasons for disagreeing with the determination that Plaintiff was disabled. *Pelkey*, 433 F.3d at 579 (8th Cir. 2006).

In determining Plaintiff's RFC, the ALJ first identified and considered Plaintiff's functional limitations. In particular, the ALJ found Plaintiff "experienced a cerebrovascular accident either on or before mid-December 2012 but that the medical evidence of record thereafter simply fails to support that the claimant is anywhere near as functionally limited as he alleges" (Tr. 19). In reaching this conclusion, the ALJ considered, as addressed in more detail above, Plaintiff's subjective complaints and conducted a thorough review of the limited medical record (*See* Tr. 16-19). Further, the ALJ properly considered the medical opinion evidence of record. Specifically, the ALJ reviewed the opinion of Thomas Spencer, Psy.D. ("Dr. Spencer") and assigned it "significant weight" (Tr. 17). On April 24, 2013, Dr. Spencer performed a psychological consultative examination on Plaintiff (Tr. 382-85). Dr. Spencer assigned Plaintiff a Global Assessment of Functioning (GAF)[3] of 50 to 55 finding Plaintiff retained the ability to understand, remember, and carry out simple instructions and tasks (Tr. 385). Dr. Spencer also opined that Plaintiff demonstrated a moderate impairment in his ability to interact socially, and in his ability to adapt to changes in the workplace (Tr. 17, 385).

The ALJ also reviewed the opinions of non-examining state agency psychological consultant, Dr. Mark Altomari, Ph.D. ("Dr. Altomari"). Dr. Altomari issued two Mental

---

[3] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *See Diagnostic and Statistical Manual of Mental Disorders, DSM–IV*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32. *See also Goff*, 421 F.3d at 789, 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 51-60 supported ALJ's limitation to simple, routine, repetitive work).

Residual Functional Capacity Assessments, both dated May 2, 2013 (Tr. 85-87, 100-02). In both assessments, Dr. Altomari found Plaintiff moderately limited in his ability to understand and remember detailed instructions; his ability to carry out detail instructions; his ability to interact appropriately with the general public; and his ability to respond appropriately to changes in the work setting (Tr. 85-87, 100-02 ). The ALJ assigned his opinions "some weight" as they are "somewhat consistent with the medical evidence of record" but noted that "more weight is given to the opinions of Dr. Spencer on these issues because he thoroughly examined the claimant prior to the formulation of his opinions, and his opinions are more consistent with the totality of the evidence of record" (Tr. 19). It is the ALJ's function to resolve conflicts among differing medical opinions. *See Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Indeed, as addressed above, Dr. Spencer found Plaintiff to be more limited than Dr. Altomari.

Additionally, while the ALJ correctly notes that there is no medical opinion evidence on record regarding Plaintiff's physical impairments, the ALJ closely reviewed the records of consultative examiner, Dr. John Demorlis, M.D. ("Dr. Demorlis") (Tr. 17, 373-80). In so doing, the ALJ noted that despite Plaintiff's reports of being unable to see out of his left eye, Dr. Demorlis notes indicate that Plaintiff demonstrated a visual acuity of 20/20 with both eyes together with full extra ocular movement (Tr. 17, 380). Additionally, while Dr. Demorlis noted decreased range of motion in Plaintiff's right wrist, Plaintiff demonstrated completely normal hand strength bilaterally and had calluses on his right palm (Tr. 17, 375, 380). Dr. Demorlis also found Plaintiff had full strength and full range of motion in his spine, hips and knees (Tr. 375-76). Finally, as the ALJ indicates, the remainder of Dr. Demorlis' opinion revealed essentially normal findings throughout (Tr. 17, 373-80).

While Plaintiff asserts that the ALJ failed to mention, much less weigh, the opinion evidence from Plaintiff's treating physician, Plaintiff misconstrues the term "opinion," affording

it the common definition as opposed to its definition under social security regulation. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). To that end, upon review of the record, the Court notes that Plaintiff's treating physicians did not submit any opinions on his behalf and it was Plaintiff's burden to provide any evidence establishing disability. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) ("Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment."). *Buford*, 824 F.3d at 797 ("Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC.") (internal citations omitted).

Additionally, the ALJ properly considered the third party opinions submitted on Plaintiff's behalf (Tr. 19). When determining RFC, the Commissioner must consider all relevant medical and other evidence, including descriptions and observations of the limitations by both the plaintiff and others such as family or friends. 20 C.F.R. § 404.1545(a)(3). To the extent the statements contain opinions, the ALJ "generally should explain the weight given to [nonmedical source] opinions." 20 C.F.R. § 404.1527(f)(2). Amanda Henson, Plaintiff's wife, submitted a Third Party Function Report dated January 28, 2013 (Tr. 244-51). Rebecca Counts, Plaintiff's daughter, also submitted an affidavit (322-24). Both third party opinions indicate that Plaintiff is unable to complete personal care tasks alone, is unsteady when walking, and does not cook or clean (Tr. 246-47, 323-24). The ALJ assigned these opinions "minimal weight" as "they essentially mirror the claimant's allegations, which were found to be only partially credible" (Tr. 19). The ALJ may discount third-party testimony on the same grounds as he or she discounts a claimant's own testimony. *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998). *See also Buckner*

*v. Astrue*, 646 F.3d 549, 559-60 (8th Cir. 2011) (finding ALJ's failure to explicitly address observations of claimant's girlfriend did not require remand when the observations were identical to claimant's statements and ALJ discounted credibility of claimant).

Finally, to the extent the Plaintiff asserts that the ALJ should have contacted his treating and examining physicians for additional medical evidence, the Court finds that the medical evidence of record provided a sufficient basis for the ALJ's decision. *Kamann*, 721 F.3d at 950. Further, while Plaintiff argues that the ALJ ignored portions of the record and identifies records that support Plaintiff's allegations, the ALJ is not required to discuss every piece of evidence submitted and "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

In conclusion, upon determining Plaintiff's RFC, the Court finds that the ALJ properly considered the evidence of record, including Plaintiff's subject complaints, the opinions of examining and non-examining doctors and Plaintiff's treatment notes. Contrary to Plaintiff's conclusory assertion, the ALJ properly considered Plaintiff's impairments in combination. *Martise,* 641 F.3d at 924. The Court also notes that the ALJ is not required to "mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). As such, the Court finds that the ALJ's RFC determination is based on substantial evidence and is consistent with the Regulations and case law, and that Plaintiff's arguments to the contrary are without merit.

### C. Vocational Expert

Finally, to the extent Plaintiff asserts that the ALJ failed to properly include Plaintiff's exertional and non-exertional limitations in his hypothetical to the vocational expert, an ALJ is

required to include only a claimant's credible limitations. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)); *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded."); *Guilliams v. Barnhart*, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); *Gilbert v. Apfel*, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record.").  As addressed in more detail above, the Court finds the ALJ's RFC determination to be supported by substantive evidence.  Further, the hypothetical which the ALJ posed to the VE captured the concrete consequences of Plaintiff's limitations and included all of Plaintiff's impairments as supported by substantial evidence in the record (*See* Tr. 69-71). Because there was work which Plaintiff could perform, based on the testimony of the VE and her independent review of the DOT, the ALJ found Plaintiff was not disabled.  *Martise*, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.' ") (quoting *Lacroix*, 465 F.3d at 889).  As such, the Court finds that the ALJ posed a proper hypothetical to the VE; that the ALJ properly relied on the VE's testimony that there was work existing in significant numbers which Plaintiff could perform; and that the ALJ's finding that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 27th day of September, 2017.

　　　/s/ Noelle C. Collins　　　　　　
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE